# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOBILE COMMERCE FRAMEWORK, INC.,<br><br>Plaintiff,<br>vs.<br>FOURSQUARE LABS, INC.,<br>Defendant. | CASE NO. 11-CV-0481 BEN (BLM)<br><br>**CONSOLIDATED CLAIM CONSTRUCTION ORDER** |
| MOBILE COMMERCE FRAMEWORK, INC.,<br><br>Plaintiff,<br>vs.<br>GROUPON, INC.,<br>Defendant. | CASE NO. 11-CV-2586 BEN (BLM) |
| MOBILE COMMERCE FRAMEWORK, INC.,<br><br>Plaintiff,<br>vs.<br>YELP! INC.,<br>Defendant. | CASE NO. 11-CV-2589 BEN (BLM) |

//

//

1    This matter comes before the Court for construction of claim terms in connection with U.S. Patent 7,693,752 ("the '752 Patent"). Plaintiff Mobile Commerce Framework, Inc. ("MCF") has filed separate lawsuits, alleging infringement of the '752 patent by Foursquare Labs, Inc. ("Foursquare"), Yelp! Inc. ("Yelp"), and Groupon, Inc. ("Groupon"). The parties have filed claim construction briefs and the Court held a consolidated claim construction hearing. MCF and Foursquare dispute the meaning of eight terms. MCF and Yelp/Groupon dispute four terms. Because Foursquare, Yelp, and Groupon argue for the same construction of two terms, a total of ten terms are in dispute. Having considered the parties' briefing, oral arguments, and applicable law, the Court construes the terms as set out below.

## BACKGROUND

As relevant to this case, the '752 patent concerns ways of presenting subscription-based content to the user of a mobile device, such as a cell phone. '752 Patent, col.1, ll.19-21. MCF accuses the defendants of infringing claims 1, 2, 4-9, 12, 14, and 20 through their applications for mobile devices. Claims 1 and 20 are independent claims. The other asserted claims depend from claim 1, which describes a five-step method for presenting merchant information on the mobile device through a subscription-based shopping network. The parties agree that the meaning of the disputed terms is consistent across claims. All appear in claim 1. It recites:

> A subscription-based method for presenting merchant information to a ***mobile device***, the method comprising:
>
> ***receiving, at a server system over a communication network from the mobile device, a user inputted search for a merchant type within a geographical area and a user identification***, ***the request*** having been received at the mobile device via a user interface presented by an application that runs on the mobile device;
>
> authenticating the user identification to verify that the user has a ***membership in a subscription-based shopping network***;
>
> accessing, by the server system, a ***database*** storing information pertaining to ***merchants participating in the subscription-based shopping network***, the accessing comprising identifying a matched merchant of the merchants participating in the subscription-based shopping network, the matched merchant having a physical location within the geographical area and being associated in the database with the ***merchant type***;
>
> retrieving, from the database by the server system, associated information for the matched merchant, the associated information comprising a name of the matched merchant, information regarding the physical location of the matched merchant, and a ***promotional offer*** offered by the matched merchant, the promotional offer

- 2 -

    incentivizing the user to visit the physical location of the matched merchant and ***demonstrate the user's membership*** in the subscription-based shopping network to receive a discount on a product or a service from the matched merchant; and

    transmitting, from the server system over the communication network for presentation to the user via the user interface on the mobile communication device, the associated information.

'752 Patent, col.12 ll.66-67; col.13 ll.1-32.

## DISCUSSION

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citation and internal quotations marks omitted). Determining the "scope and meaning of the patent claims asserted" is a task reserved for judges. *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).

"The words of a claim are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (internal quotation marks omitted). Courts make this determination from the perspective of a person of ordinary skill in the art at the time the patent is filed. *Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

"In some cases, the ordinary meaning of the claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood woods." *Accumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007) (citing *Phillips*, 415 F.3d at 1314). However, "[b]ecause the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "Those sources include 'the words of the claims themselves, the remainder of the specification, the

1 prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of
2 technical terms, and the state of the art.'" *Id.* (quoting *Innova*, 381 F.3d at 1116).

3       Sources in the intrinsic record are preferred. *Chamberlain Grp.*, 516 F.3d at 1335. Often, "the
4 claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*,
5 415 F.3d at 1314. But "claims 'must be read in view of the specification, of which they are a part.'"
6 *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). In
7 fact, the specification is usually "dispositive," as "it is the single best guide to the meaning of a
8 disputed term." *Id.* (internal quotation marks omitted). Finally, the court should consider the patent's
9 prosecution history, which is the record of proceedings before the Patent and Trademark Office
10 ("PTO") and includes prior art cited during the patent examination. *Id.* at 1317. Caution is warranted
11 here, however. "[B]ecause the prosecution history represents an ongoing negotiation between the PTO
12 and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the
13 specification and thus is less useful for claim construction purposes." *Id.*

14       If the intrinsic evidence resolves the ambiguity in the disputed claim terms, then "it is improper
15 to rely on extrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir.
16 1996). If ambiguities in the claim terms remain, however, courts may consider extrinsic evidence.
17 *Id.* at 1584. Extrinsic evidence includes expert testimony, inventor testimony, dictionaries, and
18 scientific treatises. *Phillips*, 415 F.3d at 1317.

19       The disputed terms are set out below. In almost every case, MCF contends no construction
20 is necessary. However, because MCF disagrees with the opposing parties' constructions, it has
21 proffered its own.

22     **A.**    **"mobile device"**

| Claim Term | MCF's Proposed Construction | Foursquare/Yelp/Groupon's Proposed Construction |
|---|---|---|
| Mobile device | "Portable handheld communication device" | "Laptop computers, cell phones, PDAs or any general purpose mobile machine that processes data" |

28       The dispute here is whether the term "mobile device" includes laptop computers. At the

- 4 -

1 hearing, the parties agreed that it did and stipulated to a construction that added "including a laptop
2 computer" to MCF's proposed language. Tr. of Claim Construction Hr'g at 8 ("Tr."). The Court finds
3 this construction appropriate. One of ordinary skill in the art would construe "mobile device" to mean
4 "a portable handheld communication device, including a laptop computer."

**B.     "the request"**

| Claim Term | MCF's Proposed Construction | Foursquare/Yelp/Groupon's Proposed Construction |
|---|---|---|
| The request | "A user inputted search for a merchant type" | "The user inputted search for a merchant type within a geographical area and a user identification" |

Of all the disputed terms, "the request" received, by far, the most attention at oral argument. The term appears in the first step of claim 1. It refers to information a user manually inputs on a mobile device:

> Receiving, at a server system over a communication network from the mobile device, a user inputted search for a merchant type within a geographical area and user identification, *the request* having been received at the mobile device via a user interface presented by an application that runs on the mobile device;

'752 Patent, col.13 ll.1-6.

To determine the scope of the request, i.e. *what* the user must input, the parties agree that the Court must look at the preceding clause, which describes information a server subsequently *receives* from the device, namely "a user inputted search for a merchant type within a geographical area and a user identification." The principal difference in their positions is how much of the so-called "receiving clause" is encompassed by "the request."

MCF contends that "the request" refers only to the front end—"a user inputted search for a merchant type." MCF doesn't dispute that a server must ultimately receive three pieces of information: (1) a merchant type; (2) a geographic area, and; (3) a user identification. Its position is that the only thing the user *must* input is the merchant type (the mobile device may be configured to provide the rest).

Defendants contend that "the request" refers to the receiving clause in its entirety. In effect, Defendants would require the user to manually input all three pieces of information. Both parties rely

- 5 -

exclusively on intrinsic evidence.

Looking first at "geographical area," the Court finds more support for MCF's proposed construction, particularly in the specification, which teaches two alternatives with respect to geographical area:

> A subscriber to the shopping network can use a mobile device **120** to enter information about their present geographic area....
>
> Alternatively, the mobile device **120** may be configured to automatically locate a geographical area in which the mobile device **120** is located. For example, the mobile device **120** may have global positioning system (GPS) capability or may have capabilities to locate a local area code.

'752 Patent, col.7 ll.30-41 (emphasis added).

Put differently, the specification contemplates either a user inputting the geographical area or the device locating it. Because "the request" refers only to the information that a user *must* input, geographical area cannot be part of that term.

Defendants contend that manually inputting a geographical area and configuring a mobile device to first *locate* a geographical area are not mutually exclusive. They argue that nothing in the patent suggests GPS-determined location would be received at the server without additional, user-provided information, such as a search radius, to define the geographic *area*. The Court is not persuaded. That ignores the word "alternatively" in the above-cited excerpt. Further, neither the specification nor the claims draw a distinction between a geographical "area" and "location." In fact, both plainly contemplate a mobile device being configured to locate a "geographical area." '752 Patent, col.7 ll.31-32; col.13 ll.47-53. Although the applicant did draw this distinction during prosecution to argue that GPS data *could* be coupled with manually inputted information to determine a geographical area, the applicant did not clearly and unambiguously disclaim the use of GPS data alone.

The Court also finds that "user identification" falls outside the scope of "the request," although it is a closer question. Manual input of a user identification is not disclosed anywhere in the patent. What the specification does disclose is a mobile device with "software for passwords and mobile user identification names." '752 Patent, col.8 ll.5-7. MCF suggests, and the Court agrees, that the presence of such software would suggest to one of ordinary skill in the art that a device could be configured to

1  supply the user information.

2        Finally, the Court is not persuaded the syntax of claim 1 requires adoption of Defendants' 3 proposed construction. Defendants contend that if the patentee intended "the request" to refer only 4 to a user-inputted search for a merchant type, rather than the entirety of the preceding phrase, it would 5 have used the term "the search" instead of "the request." By employing different terms, Defendants 6 argue, the patentee signaled that "the request" refers to something more than just the "search for a 7 merchant type." Different words in a patent claim are generally presumed to carry different meanings. 8 *See August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011) (reasoning that "wafer" 9 and "wafers" were not synonymous because the contrary reading would "render[] any difference 10 between the singular and the plural terms superfluous). In this case, however, "request" is preceded 11 by the article "the," which suggests that it is shorthand having an implied antecedent basis in a prior 12 claim term. *See Energizer Holdings, Inc. v. Int'l Trade Comm.*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) 13 (concluding that the term "anode gel" was by implication the antecedent basis for a different term, 14 "said zinc anode"). Reading the claim term in light of the specification, the Court agrees with MCF 15 that a "user inputted search for a merchant type" is the proper antecedent basis for "the request." 16 Accordingly, the Court finds that one of ordinary skill in the art would construe "the request" in 17 accordance with MCF's proposed construction. It means: "A user inputted search for a merchant 18 type."

19      **C.    "receiving, at a server system over a communication network from the mobile**
20              **device, a user inputted search for a merchant type within a geographical area**
21              **and a user identification"**

| Claim Term | MCF's Proposed Construction | Foursquare's Proposed Construction |
|---|---|---|
| receiving, at a server system over a communication network from the mobile device, a user inputted search for a merchant type within a geographical area and a user identification | "A server system must receive over a communication network from a mobile device: (1) a user inputted search for a merchant type within a geographical area; and (2) a user identification." | "A server system must receive over a communication network from a mobile device: a user inputted (1) merchant type; (2) geographical area; and (3) user identification as part of the request." |

1    The next disputed term is the receiving clause referenced in the Court's discussion of "the
2 request." The arguments are the same. The dispute is over which pieces of information, received by
3 the server, must have been manually inputted by the mobile device user. MCF's proposed
4 construction is consistent with the Court's construction of "the request." Accordingly, the Court
5 adopts it. The term "receiving, at a server system over a communication network from the mobile
6 device, a user inputted search for a merchant type within a geographical area and a user identification"
7 means that "a server system must receive over a communication network from a mobile device: (1)
8 a user inputted search for a merchant type within a geographical area; and (2) a user identification."

### D.   "merchant type"

| Claim Term | MCF's Proposed Construction | Foursquare's Proposed Construction |
|---|---|---|
| Merchant type | "A category of merchants having some common characteristic" | "Classification of a merchant by either a good or service provided by the merchant" |

As discussed above, the claimed method requires the mobile device user to search for a "merchant type." Foursquare seeks to limit the definition of "merchant type" to classifications based on goods or services as no other classifications are identified in the patent. MCF urges the Court not to read this limitation into the claim language. It relies on broader dictionary definitions of "type," as well as the doctrine of claim differentiation. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

The Court begins its analysis with the claims. Dependent claim 2 claims the "method in accordance with claim 1, wherein each merchant participating in the subscription-based shopping network is associated with at least one merchant type in the database, wherein the merchant is classified by *at least a product or service* provided by the merchant." '752 Patent, col.13 ll.33-37 (emphasis added). The presence of this limitation on merchant type in a dependent claim suggests it is not present in the broader, independent claim from which claim 2 depends. Thus, the term "merchant type," which appears in claim 1, is not so limited.

The Court also is not persuaded that the specification demonstrates a clear intention to limit

- 8 -

1  the claim scope in the manner Foursquare suggests. The specification states that "the merchant type
2  may be classified by at least a product or service provided by the merchant," '752 patent, col.2
3  ll.34-41, the words "at least" suggesting that the term "merchant type" encompasses more. Elsewhere,
4  the specification lists auto, entertainment, food, travel, etc., as possible classifications, but broadly
5  states that "other merchant types" are possible. '752 patent, col.12 ll.48-49. Foursquare fails to
6  convince the Court that one of ordinary skill in the art would construe "merchant type" in the manner
7  it suggests. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even
8  when the specification describes only a single embodiment, the claims of the patent will not be read
9  restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using
10 'words or expressions of manifest exclusion or restriction.'"). Accordingly, the Court adopts MCF's
11 proposed construction. "Merchant type" means "a category of merchants having some common
12 characteristic."

**E.   "subscription-based shopping network" and "membership in a subscription based shopping network"**

| Claim Term | MCF's Proposed Construction | Foursquare's Proposed Construction |
|---|---|---|
| Subscription-based shopping network | "A shopping network that is accessible to users that subscribe by arranging to receive access to the network" | "A shopping network that comprises only user subscribers and 'participating' merchants whereby membership in the shopping network is on a periodic basis." |

| Claim Term | MCF's Proposed Construction | Yelp/Groupon's Proposed Construction |
|---|---|---|
| Membership in a subscription based shopping network | "Membership in a shopping network that is accessible to users that subscribe by arranging to receive access to the network" | "Membership in a network in which shopping offerings are presented only to individuals who have registered with the network" |

MCF and Foursquare dispute the meaning of "subscription-based shopping network." MCF and Yelp/Groupon dispute the meaning of "membership in a subscription-based shopping network." Because these terms overlap, they are best discussed in tandem.

It is clear from the proposed constructions that there are three main points of dispute. The first

- 9 -

concerns the composition of the claimed network. The second concerns whether user memberships must be "on a periodic basis." The third concerns whether the shopping offerings must be exclusive to subscribers. The Court will address each in turn.

The first issue is network composition. The parties appear to agree that the users of a shopping network are subscribers. Beyond that, however, their proposed constructions diverge. Foursquare contends that the network "comprises only" user subscribers and "participating" merchants. MCF proposes a construction that speaks only of "users that subscribe." The Court finds both proposals problematic.

Claim 1 speaks of "merchants participating in the subscription-based shopping network" as well as users that have a "membership in a subscription-based shopping network." '752 Patent, col.13 ll.7-9, 11-12. The claim language does not expressly limit the network's composition to such entities, and the specification appears to foreclose Foursquare's proposed construction by naming a "a shopping network intermediary" among the entities that may be associated with the network. '752 patent, col.4 ll.27-30.

It is clear, however, that Foursquare's main concern is excluding merchants other than "participating" merchants. MCF acknowledged during the hearing that "the network doesn't include merchants who don't elect to be part of the network" (Tr. at 60), but this really does not settle much because "participating" is part of a different disputed term, addressed later in this Order. MCF's counsel stated that if "participating" merchants "means merchants who have registered" then Foursquare's proposed limitation "is okay." Tr. at 60. But Foursquare contends that "participating" requires much more. If only for purposes of clarity, the Court declines to adopt a construction of "subscription-based shopping network" that includes another hotly disputed term. For now, it suffices to say that the network is comprised of users that subscribe and merchants that register.[1] Whether merchants must do more to participate is addressed as part of the Court's construction of the next disputed term.

---

[1] After both sides had presented their arguments at the *Markman* hearing, Yelp's counsel summarized the points of agreement as follows: "It seems that the parties agree that the subscribers—the subscribers to the subscription-based shopping network[—]are only those the subscribe, and that there is an agreement that the merchants in the subscription-based shopping network are only those merchants who register." Tr. at 69.

1    The second issue concerns whether user subscriptions must be "periodic," e.g. annual. Although this limitation is not expressly made in the claims or specification, Foursquare points to statements in the prosecution history that it believes support the requirement. For instance, in its Request for Reconsideration in Reply to a Final Office Action of August 20, 2009, the applicant told the examiner that "[t]he claimed subject matter can create a valuable motivation to a subscriber to maintain their membership with the subscription based service because only by doing so does the subscriber a) receive the special offers and b) have the ability to redeem the special offers." To Foursquare, the idea of membership maintenance suggests that periodic affirmative conduct is necessary to prevent expiration. Foursquare also points to the examiner's references to Costco and Sam's Club as examples of subscription-based shopping networks. Both are membership-only warehouse stores that sell periodic memberships.

Citing dictionaries and examples of how others have used the term "subscription," particularly on the Internet and in the mobile commerce industry, MCF contends that the word means an arrangement "to receive access," nothing more. The Court agrees with MCF that the prosecution history does not show, clearly and unmistakably, that the inventor and examiner understood the claimed subscriptions to be periodic. By "maintain their membership," the applicant may simply have meant "not cancel." And nothing in the file history suggests that the examiner's references to Sam's Club and Costco had anything to do with this particular characteristic of their memberships. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) (stating that disavowing actions or statements must be both "clear and unmistakable"); *Northern Telecom Ltd. v. Samsung Electronics Co.*, 215 F.3d 1281, 1293-95 (Fed. Cir. 2000) (declining to narrow a claim term based on inventors' statements that were amenable to different interpretations).

The third issue is whether shopping offerings made by in-network merchants must be exclusive to subscribers. Yelp and Groupon contend that, during prosecution, the applicant disclaimed coverage of any network that permits non-subscribers to receive special offers. MCF contends that the applicant did not surrender as much as Yelp/Groupon asserts, although it acknowledges that *some* offers must be exclusive to subscribers.

To distinguish the '752 invention from prior art (the "Wilson patent") that claimed a more

- 11 -

general location-based search of merchants within a geographical area, the applicant stated that Wilson "fails to describe or even fairly suggest receipt of a search request from a mobile device for merchant or service provider information that includes offerings available only to a subscriber to the shopping network." To Yelp and Groupon, this is a clear disavowal of claim scope. They argue that the '752 invention requires that *all* merchant offerings be exclusive to the subscription-based shopping network. The Court is not persuaded. The word "includes" injects some ambiguity into the applicant's statement to the examiner. One reading is that as long as *some* offers are exclusive to the network, participating merchants can make other offers both in-network and out. Because the prosecution history does not show, clearly and unambiguously, that the inventor disclaimed coverage of any network *without* complete exclusivity, the Court will not adopt the Yelp/Groupon construction.

MCF's construction is also flawed. Despite MCF's acknowledgment that at least some offers need to be exclusive to the network, that limitation appears nowhere in its proposed construction. Accordingly, the Court will adopt its own construction.

The Court finds that the claimed "subscription-based shopping network" has the following characteristics: (1) users that subscribe; (2) merchants that register; (3) some exclusive offers. The Court is not persuaded user subscriptions must be periodic. Accordingly, the Court construes a "subscription-based shopping network" to mean "a shopping network comprised of users that subscribe and merchants that register, and within which some merchant offerings are available only to subscribers." The overlapping term "membership in a subscription-based shopping network" requires no additional construction.

**F.   "merchants participating in the subscription-based shopping network"**

| Claim Term | MCF's Proposed Construction | Foursquare's Proposed Construction |
|---|---|---|
| Merchants participating in the subscription-based shopping network | "Merchants that have agreed to take part in the subscription-based shopping network" | "Merchants have agreed to be a part of the subscription-based shopping network, and provided promotional offers that are only available to subscribers of the subscription-based shopping network" |

1   To participate in the network, a merchant must register. On this much, at least, the parties
2   agree. Tr. at 60, 69. Whether more is required is the subject of dispute. Foursquare contends that
3   "participating" requires: (1) making promotional offers[2] that are (2) exclusive to subscribers. The
4   Court has already rejected the argument that all merchant offerings must be exclusive to subscribers.
5   The remaining issue is whether simply making promotional offers is a requirement for merchant
6   participation.

7   Turning first to the claim language, claim 1 requires accessing a database and "identifying a
8   *matched merchant* of the merchants participating in the subscription-based shopping network," then
9   retrieving associated information for the matched merchant, which includes "a promotional
10  offer[.]" '752 patent, col.13 ll.10-28 (emphasis added). Foursquare contends that the retrieval step can
11  only happen if all participating merchants make promotional offers. The Court is not convinced. As
12  MCF notes, the only express requirement is that the "matched merchant" make a promotional offer.
13  A "participating" merchant can conceivably participate without making a promotional offer, as long
14  as it is not identified as the matched merchant.

15  The specification squares with this interpretation. The patent speaks of locating and presenting
16  "one or more of the commercial resources," which is defined as "information relating to goods and
17  services provided by merchants within a shopping network." '752 Patent, col.1 ll.50-57. Such
18  information "can include a merchant name, a merchant address, a merchant advertisement, a merchant
19  telephone number, a merchant coupon, a merchant product offering, *or* a merchant service offering."
20  '752 Patent, col.2 ll.3-6 (emphasis added). The word "or" suggests that merchants can provide
21  something other than product or service offerings.

22  The file history does not require a different reading. During prosecution, the applicant
23  distinguished the '752 invention by stating that "the merchants from which the matched merchant is
24  identified [in the database] are only those that actively participate in the subscription-based shopping
25  network within which the user has a membership." Supplemental Amendment in Response to Final
26  Office Action of August 20, 2009 and Advisory Action and Examiner Interview, at 11. Again, the
27  focus is the "matched merchant," not all participating merchants. Moreover, the adverb "actively"
28

---

[2] "Promotional offer" is itself a disputed term, addressed later in this Order.

1 suggests that participate is, by itself, a broader term.  Accordingly, the Court finds that a person of
2 ordinary skill in the art would construe the term in accordance with MCF's proposed construction.
3 The term "merchants participating in a subscription-based shopping network" means "merchants that
4 have agreed to take part in the subscription-based shopping network."

**G.     "database"**

| Claim Term | MCF's Proposed Construction | Foursquare's Proposed Construction |
|---|---|---|
| Database | "A collection of data held in a computer" | "A computer data structure storing only information relating to participating merchants and user subscribers of subscription-based shopping network" |

MCF and Foursquare dispute whether the claimed "database" may only contain information relating to participating merchants and user subscribers of the shopping network.  Citing dictionaries, MCF argues that "database" should be broadly construed as "a collection of data held in a computer."  Foursquare disagrees.

The claims do not expressly disclaim databases that contain other information.  Claim 1, for example, describes a "database" that stores information "pertaining to merchants participating in the subscription-based shopping network."  '752 Patent, col.13 ll.10-12.  It does not say the database must *only* store such information.  Because there is no express disavowal in the claim language of databases with additional information, the Court must look to the specification and file history to determine whether there is support for Foursquare's proposed limitation.

The language in the specification resembles that in the claims.  It describes a database that "stores information for merchants, service providers, and members associated with the subscription service for commercial resources."  '752 Patent Col. 7 ll. 5-7.  It does not say the database "only" stores such information.

Foursquare leans heavily on the file history here.  During prosecution, the applicant distinguished the '752 invention from Wilson by stating that "the merchants from which the matched merchant is identified [in the database] are only those that actively participate in the

subscription-based shopping network within which the user has a membership." The Court is not persuaded that this language clearly and unequivocally limited the contents of the database only to participating merchants and user subscribers. All it suggests is that the "matched merchant" must be a network participant. The Court declines to read the proposed limitations into the term "database." MCF's proposed construction more closely aligns with the described invention. The term "database" means "a collection of data held in a computer."

**H.     "promotional offer"**

| Claim Term | MCF's Proposed Construction | Foursquare's Proposed Construction |
|---|---|---|
| Promotional offer | "An offer that promotes a merchant" | "A members-only discount on a product or service offered by a merchant participating in the subscription-based shopping network that is redeemable only at the physical location of the merchant by the user demonstrating membership in the subscription-based shopping network" |

Citing dictionaries, MCF proposes that "promotional offer" means simply, "an offer that promotes a merchant." Foursquare asserts that "promotional offer" has a special meaning in the claims. It proposes: "A members-only discount on a product or service offered by a merchant participating in the subscription-based shopping network that is redeemable only at the physical location of the merchant by the user demonstrating membership in the subscription-based shopping network."

The Court has already concluded that the claimed method does not require that *all* promotional offers be for "members only." The claimed method only requires that *some* promotional offers fit that description. Thus, to the extent Foursquare's proposed construction of promotional offer includes a "members only" limitation, it is rejected. Otherwise, Foursquare's proposed construction is consistent with the definition in the claim language and the applicant's statements during prosecution. Claim 1 recites a promotional offer that "incentiviz[es] the user to visit the physical location of the matched merchant and demonstrate the user's membership in the subscription-based shopping network to

receive a discount on a product or a service from the matched merchant." '752 Patent Col. 13 ll. 23-28. Foursquare's construction is consistent with that definition. The Court finds that a person of ordinary skill in the art would construe "promotional offer" in this context to mean "a discount on a product or service offered by a merchant participating in the subscription-based shopping network that is redeemable only at the physical location of the merchant by the user demonstrating membership in the subscription-based shopping network."

### I. "demonstrate the user's membership"

| Claim Term | MCF's Proposed Construction | Yelp/Groupon's Proposed Construction |
|---|---|---|
| Demonstrate the user's membership | "Provide information demonstrating that the user is a member" | "Provide the user's membership information that identifies the user as a member" |

The final disputed term is "demonstrate the user's membership." Yelp/Groupon acknowledged in their responsive brief that the substance of the parties' proposals is essentially the same. Accordingly, they agreed to a slightly modified version of MCF's proposed construction. The Court finds that construction appropriate. "Demonstrate the user's membership" means "provide information that demonstrates his or her membership."

### CONCLUSION

The Court construes the disputed claim terms as discussed above.

**IT IS SO ORDERED.**

DATED: February 6, 2013

_____
Hon. Roger T. Benitez
United States District Judge